FILED
2015 Mar-13  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| K.D., a minor child, by and through her parents and guardians, J.D. and S.D., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL WAYNE WOOTEN, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

2:12-cv-2734-SGC

# **MEMORANDUM OPINION**

This matter comes before the court on Defendants Birmingham Board of Education and Aaron Moyana's Motion for Summary Judgment (doc. 42); the magistrate judge's report and recommendation filed on November 12, 2014 (doc. 49); the Plaintiff's partial objections (doc. 50); and the Defendants' response to those objections (doc. 51).

**Claims Voluntarily Abandoned by the Plaintiff**

In the Plaintiff's response to the motion for summary judgment (doc. 45), she voluntarily abandoned her claims against the Board of Education and Moyana under 42 U.S.C. § 1983; abandoned her state law claims of tort of outrage,

defamation, false imprisonment, and assault and battery against Moyana; and agreed that the court should dismiss the Board as a party-defendant because it has sovereign immunity for any remaining state law claims against it.  As such, the magistrate judge recommends that the court dismiss all of those claims voluntarily abandoned by the Plaintiff and dismiss the Board of Education as a party-defendant.  The court ACCEPTS the magistrate judge's recommendation on these abandoned claims and ADOPTS her recommendation to dismiss these claims with prejudice and dismiss the Board of Education as a party-defendant in this action.

**Plaintiff's Negligence and/or Wantonness and/or Recklessness Claim Against Defendant Moyana**

The only remaining claim subject to the motion for summary judgment before the court is the Plaintiff's claim against Defendant Moyana in his individual capacity for negligence and/or wantonness and/or recklessness.  The magistrate judge recommends that the court grant Moyana's motion for summary judgment regarding this remaining claim against Moyana and enter judgment in his favor because he is entitled to State-agent immunity under Alabama law.[1]  (Doc. 49 at 15).

---

[1] The court agrees with the magistrate judge that Alabama does not recognize a cause of action against a supervisor for negligent supervision of a subordinate and that a negligent supervision claim must be against the employer.  (*See* Doc. 49 at 8-10).  To the extent that the Plaintiff's complaint contains a cognizable cause of action against Moyana in his individual capacity, the court will address whether Moyana is entitled to State-agent immunity.

**Plaintiff's Objections Regarding the Remaining Claim Against Moyana**

On November 25, 2014, the Plaintiff filed her "Partial Objection to Magistrate Judge's Report and Recommendation of November 12, 2014," restricting her objection "to the recommendation that Moyana be granted a summary judgment as to the claim[] of negligence, wantonness or recklessness and to the magistrate's conclusions that Moyana enjoys State-agent immunity as to this claim. . . ." (Doc. 50 at 2). Specifically, the Plaintiff contends that the magistrate judge "accepted Moyana's 'factual' presentation while ignoring or discounting K.D.'s proffered evidence" and that she "summarily dismissed the existence of any conflict in the evidence." In her objections, the Plaintiff lists the facts that she contends the magistrate judge "ignored." (Doc. 50 at 6-7). The Plaintiff claims that the magistrate judge "made credibility determinations and weighed the evidence and did so in Moyana's favor even though he is the movant." (Doc. 50 at 11).

In her objections, the Plaintiff also claims that the magistrate judge erred by relying on the analysis of the Alabama Supreme Court in *D.A.C. v. Thrasher*, 655 So. 2d 959 (Ala. 1995), which she contends is factually distinguishable from the present case. (Doc. 50 at 11-14). Moreover, the Plaintiff also claims that the magistrate judge's report and recommendation is "devoid of any mention of" the

Alabama Supreme Court's decision in *N.C. v. Caldwell*, 77 So. 3d 561 (Ala. 2011), which the plaintiff heavily relied upon in her response to the motion for summary judgment and claims supports her argument that Moyana is not entitled to State-agent immunity in this case. (Doc. 50 at 19).

**Defendants' Response to Plaintiff's Partial Objections**

On December 4, 2014, the Defendants Birmingham Board of Education and Aaron Moyana filed a response to the Plaintiff's objection. (Doc. 51). Although the court did not give the Board or Moyana specific permission to file such a response, Fed. R. Civ. P 72(b)(2) allows a party 14 days to respond to a party's objections; the Defendants' response was timely; the Plaintiffs did not object to the filing; and the response is helpful to the court in making its decisions in this case. As such, the court, in this instance, will consider the arguments contained in the Defendants' response to the Plaintiff's objections.

**De Novo Review of Magistrate Judge's Report and Recommendation**

The court has carefully reviewed and considered *de novo* all materials in the court file relevant to the case, including the parties' briefs and evidentiary material submitted in support of them; the magistrate judge's report and recommendation; the Plaintiff objections; and the Defendants' response to the Plaintiff's objections. The court ADOPTS the magistrate judge's REPORT with the following additional

factual discussion and ACCEPTS her recommendation that the court grant Defendant Moyana's motion for summary judgment and enter judgment in his favor on the negligence and/or wantonness and/or recklessness claim against him in his individual capacity because he is entitled to State-agent immunity under Alabama law.

As to the Plaintiff's objection regarding the magistrate's findings of fact, the court finds that, to the extent that the magistrate judge failed to specifically include or discuss in her report the specific facts listed by the Plaintiff in her objections (doc. 50 at 6-7), the court SUSTAINS the objection.  In making its de novo review in this case, the court specifically considered the entire record, including those specific facts listed in the objections.  The court OVERRULES the Plaintiff's objections in all other respects as set out more fully below.

*Do Plaintiff's Claims Arise From a Function That Would Entitle Moyana to Immunity?*

The court agrees with the magistrate judge that Moyana was acting within his discretionary authority in his supervision of Wooten and in his decision to act or not act in response to information received about Wooten.  To "claim State-agent immunity, [Moyana] bears the [initial] burden of demonstrating that the plaintiff's claims arise from a function that would entitled the State agent to

immunity." *N.C.*, 77 So. 2d at 566.  The court does not accept the Plaintiff's argument in her objections that "Moyana had no discretion to ignore what he learned and to do nothing," such that he would not be entitled to State-agent immunity.  (*See* Doc. 50 at 15).  Deciding what to do to with information he received about Wooten goes to the very nature of discretionary authority in a *supervisory* context.  *See Gowens v. Tys. S. ex rel Davis*, 948 So. 2d 513, 531 (Ala. 2006) (holding that the supervisor's position required her to "'assess,' 'determine,' 'examine,' 'concur,' and 'devise' and 'develop plans[,]'" and that those "activities all involve[d] judgment and discretion") (citations omitted).

The court agrees with the magistrate judge that Moyana was acting within his discretionary and supervisory authority in assessing and determining whether to investigate Wooten or take any corrective action against him, and, thus, State-agent immunity applies in this case.

*Did Moyana Act Willfully, Maliciously, in Bad Faith, or Beyond His Authority?*

Because the court finds that Moyana met his burden of showing that he acted within his discretionary function as Wooten's supervisor in deciding what, if any, action to take against Wooten, the burden shifts to the Plaintiff to show that Moyana's actions fall under an exception to that immunity.  *See Caldwell*, 77 So. 3d at 566.  The heart of this case hinges on whether a genuine issue of material

6

fact exists regarding the Plaintiff's argument that State-agent immunity fails to shield Moyana because he acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *See Cranman v. Maxwell*, 792 So. 2d 392, 405 (Ala. 2000). In this case, the court finds that the magistrate judge correctly found that the Plaintiff failed to make this showing.

The Plaintiff contends that disputes of material fact exist as to whether "Moyana was aware (a) that Wooten kept photographic equipment at the Dupuy facility, (b) that Wooten disabled security devices at the Dupuy facility, (c) that Wooten put a lock on a closet to which he had the key, and (d) that Wooten was observed with minor females at the Dupuy facility when he was off-duty and had no 'Board-work-related' reason for being in the facility." (Doc. 45 at 4-5). The Plaintiff argues that these facts create a genuine issue of material fact as to whether Moyana acted willfully, maliciously, in bad faith, or beyond the scope of his authority by failing to take any corrective action as Wooten's immediate supervisor, and as to whether Moyana's complete inaction proximately caused Wooten to sexually exploit the minor Plaintiff at the Dupuy facility.

Even considering the Plaintiff's facts that were not explicitly stated in the magistrate judge's report and recommendation, giving all *reasonable* inferences to

those facts, and accepting the Plaintiff's "spin" on those facts, the court finds that such facts, at best, give rise to an inference that Moyana's actions *may* have been negligent, but not willful, malicious, in bad faith, or beyond his authority. "The immunity afforded State agents who exercise their judgment in the . . . supervision of personnel is not abrogated for negligent and wanton behavior; instead, immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003). As such, Moyana is entitled to State-agent immunity under Alabama law.

None of the evidence listed by the Plaintiff in her objections or cited in her response to the summary judgment support a finding that Moyana acted willfully, maliciously, in bad faith, or beyond the scope of his authority. Based on the deposition testimony of Billy Walker, the court could infer that Moyana knew that Wooten had photography or artist equipment at the Dupuy building and that Walker complained to Moyana that Wooten was "sitting there painting while [Walker] was out patrolling." (Doc. 46-3 at 29).

However, the facts cited by the Plaintiff in her objections that Roderick Blair looked in the closet and saw photography equipment and that John Baker stated "common knowledge" existed within the security department "that Wooten

8

did photography at the Dupuy facility" (doc. 50 at 6-7) do not support any inference that Moyana himself *knew* about Wooten using Dupuy as a photography studio.  Moreover, Baker testified in his deposition that he never discussed with Moyana "about [] Wooten's photography and painting at Dupuy."  (Doc. 46-2 at 29).

Even if the court inferred that Moyana knew that Wooten had photography equipment at the Dupuy facility, did nothing to have Wooten remove the equipment, and failed to discipline Wooten for having the equipment at the Dupuy facility without permission, those inferences fail to establish that Moyana acted willfully, maliciously, in bad faith, or beyond his authority.

The court also finds no support for the Plaintiff's contention that Moyana *knew* that Wooten *actually disabled* the security devices at the Dupuy facility. Catherine Terry testified at her deposition that she told Moyana that the cameras "would not work when Michael Wooten was in the [Dupuy] building."  (Doc. 44-9 at 26).  Terry also stated that Moyana, in response, said "okay" and asked her if she told Byron Smith, the person who worked on the cameras, about the problems. (Id. at 25-26).  Terry told Moyana that she "told Smitty and that's as far as it would go."  (*Id*. at 26).

Even if these facts led to an inference that Moyana should have investigated whether Wooten may have tampered in some way with the security devices, Terry assured Moyana that she had alerted Byron Smith, who was "the guy who worked on the cameras" that something was wrong with the cameras. (*See* Doc. 44-9 at 23-26). Nothing in these facts suggest that Moyana actually *knew* what Wooten was doing with the cameras or that Moyana acted willfully, maliciously, in bad faith, or beyond the scope of his authority regarding his decision not to investigate the matter and to rely on Byron Smith to address the camera issues.

Regarding the locked ammunition closet door, Wooten testified that Moyana initially was upset that Wooten put a lock on the ammunition closet to which only Wooten had a key and that Moyana could not access the closet. However, Wooten also testified that, after explaining to Moyana that he put the lock on the closet to "save everybody . . . ," Moyana "thought it was a good idea." Wooten also assured Moyana that, if he needed to get in the closet, Wooten would get him the key. (Doc. 44-3 at 47-48). Nothing in these facts give rise to an inference that Moyana *knew* that Wooten had anything inappropriate in the closet. Moyana's failure to get the key and look in the closet and investigate the situation *may* have been negligent, but does not support this his action or inaction was

wilful, malicious, in bad faith, or beyond his authority to remove the protection of State-agent immunity.

The Plaintiff contends that a genuine issue of material fact exists as to whether Moyana knew that Wooten was at the Dupuy facility after hours with minor females. The court disagrees. The facts cited by the Plaintiff in her objections that Reddrick Blair and Glenda Gregory saw Wooten, wearing shorts, with children on the Dupuy facility (doc. 50 at 7) do not equate to *Moyana* having knowledge that Wooten had minor children at that facility after hours.

Billy Walker testified that he heard Catherine Terry voice concerns in the office at the Davis Center, with "Moyana in the room," about Wooten having children at the Dupuy facility. (Doc. 46-3 at 22-26). Just because Moyana was "in the room" does not mean that he heard Terry's concerns; that he was standing within earshot of Terry when she made the statements; or that Terry directed her concerns to Moyana. For all the court knows, Moyana was "in the room" but engaged in conversations with others and did not even hear Terry's comments.

Even if the court inferred that Moyana knew that Wooten brought minors to the Dupuy facility, this knowledge would not equate to Moyana knowing that Wooten was doing anything inappropriate with those minors. As a matter of fact, Terry, in her deposition, testified that she never saw Wooten on the security

cameras with a child at any building, and that, although she told Moyana that Wooten was "creepy," she had no belief at the time she made that statement that "Wooten might be carrying on some type of inappropriate activity with children." (Doc. 44-9 at 35, 37-39).

The court concurs with the magistrate judge's finding that "there is no admissible evidence" that Moyana *knew* that Wooten had minors at the Dupuy facility after hours. (See Doc. 49 at 7-8). Walker's testimony as to what he heard Terry say at the office, with Moyana in the room, about her concerns that Wooten had minors at the facility would be hearsay and inadmissible evidence at trial, even if probative that Moyana heard the statement. Also, Glenda Gregory's testimony that Josephine Hollins told her that she "would" tell Moyana about Wooten having minor children at the Dupuy facility would be inadmissible hearsay at trial. (See Doc. 44-7 at 24). Moreover, no evidence exists in the record that Ms. Hollins ever actually told Moyana about Gregory's concerns.

However, Terry's statements that *she* never saw Wooten with children at the Dupuy facility and never suspected him of doing anything inappropriate with children would be admissible evidence at trial. Also, Terry, Gregory and Blair, who did have at least some knowledge about Wooten bringing minors to the Dupuy facility, gave admissible testimony that they never suspected Wooten of

any type of criminal activity at the Dupuy facility. (*See* Doc. 44-7 at 18, 27; Doc. 44-9 at 35-39; Doc. 46-1 at 17, 20). As such, these facts support that his failure to investigate or take any action against Wooten was not wilful, malicious, in bad faith, or beyond his authority.

The only other evidence referenced by the Plaintiff in her objections regarding Moyana's alleged knowledge of Wooten having children at the Dupuy facility involves conflicting statements made by Wooten himself. In his plea agreement in his criminal case, Wooten acknowledged that he "*believed* his supervisor and co-workers knew he used the office to photograph children and said it had been going on for two to three years." (Doc. 44-3 at 53) (emphasis added). However, Wooten testified in his deposition in this case that he had lied about Moyana or his co-workers having knowledge that he was photographing children at the Dupuy facility. (*Id*. at 63). Because Wooten gave two conflicting statements concerning whether Moyana knew that he was photographing children at the Dupuy facility, the court discredits both statements and draws no inference from either statement. Moreover, because Wooten admitted in his deposition testimony that he lied in his plea agreement about Moyana knowing that Wooten was photographing children at the Dupuy facility, the court cannot rely on his statement in his plea agreement that he "believed" Moyana had such knowledge.

No other evidence exists in the record from which this court could infer that Moyana *knew* that Wooten was photographing minors at the Dupuy facility. The court finds nothing in the record to show that Moyana's actions or inactions regarding his supervision of Wooten were wilful, malicious, in bad faith, or beyond his authority.

The Plaintiff's arguments regarding the magistrate judge's misapplication of the law seem to center around whether Moyana acted beyond the scope of his authority by failing to take any type of corrective measure against Wooten, and whether Moyana's failure proximately caused Wooten to harm the Plaintiff. "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (citations omitted). However, in the present case, the Plaintiff has not shown that Moyana acted beyond his authority.

In her objections, the Plaintiff claims that the magistrate judge failed to even discuss *N.C. v. Caldwell*, 77 So. 2d 3d 561(Ala. 2011), a case that purportedly supports her position that Moyana is not immune because he exceeded his authority. The court finds *N.C.* distinguishable and that the magistrate's failure to

discuss it does not provide a ground for this court to reject the magistrate judge's report and recommendation.

The Plaintiff herself acknowledges that "the particular facts in *N.C.* are somewhat different from the factorial scenario." (Doc. 50 at 16). In *N.C.*, a female student, N.C., sued Caldwell, her physical education teacher, in his individual capacity for personal injuries stemming from her rape by A.H., a student that Caldwell allegedly appointed as his aid during his 5th period class, even though A.H. was suppose to leave school each day at 11:45 a.m. and was not enrolled in the 5th period class. *N.C.*, 77 So. 2d at 562-563.  N.C. provided evidence that other students, prior to A.H.'s rape of N.C., claimed that A.H. had sexually harassed them and reported the harassment to Caldwell, who failed to report or act on those claims. *Id*. at 569.

The Alabama Supreme Court in *N.C.* held that genuine issues of material fact existed as to whether Caldwell was immune because he allegedly exceeded his authority (1) when he appointed A.H. as a student aid for his 5th period class when A.H. was not suppose to be on school grounds; and (2) when he "ignored and failed to report previous claims by other female students of sexual harassment by A.H." *Id*. at 566, 569. The Court in *N.C.* pointed to two specific rules or regulations that limited Caldwell's exercise of his judgment in supervising and

educating his students: a faculty handbook that prohibited a student from attending a class for which he was not registered; and the school's Code of Conduct that required a teacher to report incidents of sexual harassment and made it a violation for a teacher to "tolerate sexual harassment." *Id*. The Court in *N.C.* reasoned that, if Caldwell appointed A.H. as an aid and failed to report the prior incidents of sexual harassment by A.H., he may have acted beyond the scope of his authority as a teacher. *Id*.

In the present case, the Plaintiff argues that genuine issues of material fact exist whether Moyana acted beyond the scope of his authority by ignoring information about Wooten having photographic equipment at Dupuy; failing to limit Wooten's access to the facility while he was off-duty; and failing to ensure that security measures were operable at all times. (Doc. 45 at 4-5). The Plaintiff argues that "Moyana knew that Board polices (a) mandated that security measures were to be operable at all times and (b) prohibited Board employees from conducting personal business or other activities on Board property without prior approval." (*Id*. at 5). However, unlike the evidence in *N.C.*, no evidence supports the Plaintiff's contention that Moyana acted beyond his authority regarding either Board policy.

Regarding the Board policy to maintain operable security measures, the magistrate judge correctly noted that "[e]ach time the employee, Catherine Terry, reported that a motion detector at Dupuy had failed, Dr. Moyana confirmed that she had reported it to the Board employee who maintained the security systems." (Doc. 49 at 11-12) (citing Def. Ex. 9, Terry Depo, at 22, 25-26).  Also, regarding Moyana's knowledge of Wooten having photography equipment at the Dupuy facility, nothing in the record supports that Moyana *knew* that Wooten was conducting a personal photography business at the Dupuy facility.  As discussed *infra*, the court can infer only that Moyana knew Wooten had photography and artist equipment stored at the facility and that Walker complained to Moyana about Wooten painting at the facility.  The Plaintiff points to no specific Board policy that would remove Moyana's discretion to decide what action to take or not take based on Moyana's knowledge of these facts.

The Plaintiff also claims in her objections that the magistrate judge misapplied the Alabama Supreme Court case of *D.A.C. v. Thrasher*, 655 So. 2d 959 (Ala. 1995), because this case "does not present the scenario" in *D.A.C.*  Although this case is not directly on point factually, it is instructive as to the Plaintiff's claims that Moyana's failure to take action against Wooten proximately caused her to be sexually exploited.

17

In *D.A.C.*, the plaintiff claimed that one of her teacher's sexually molested her and sued her school principal because he "negligently or wantonly failed to disclose to the superintendent of the school system the names of two female students who had complained that the teacher had made improper sexual advances" several years before D.A.C. was molested. *D.A.C.*, 655 So. 2d at 960. D.A.C. argued that, had the principal reported the previous complaints of sexual advances by that teacher, she would not have been molested by that teacher because the school system would have terminated his employment years before his molestation of D.A.C. *Id*.

The Alabama Supreme Court in *D.A.C.* upheld summary judgment in the principal's favor, stating that "[p]roximate cause was a necessary element of D.A.C.'s claims. . . . To allow a jury to simply guess as to how the board of education would have found and ruled . . . would violate our well-established rule against allowing juries to base their verdicts on pure conjecture or speculation." *Id*. at 962.

Likewise, in the present case, the Plaintiff's argument that Moyana's failure to investigate and discipline Wooten proximately caused her to be sexually exploited is clothed in pure speculation and conjecture. Even if Moyana disciplined Wooten for having photography equipment at the Dupuy facility and

being at the facility while off-duty, the court would be speculating by concluding as to what type of discipline Moyana would implement, if any at all. Moreover, the court agrees with the magistrate judge that "even had Dr. Moyana advised the Board of the things allegedly within his knowledge concerning Wooten's activities, there is no evidence the Board would have done anything to curtail Wooten's activities or disciplined him, beyond mere speculation." (Doc. 49 at 12) (citing *D.A.C. v. Thrasher*, 655 So. 2d 959, 962 (Ala. 1995)). Making such a giant leap in proximate causation is improper, and the court will not engage in such speculation.

*Conclusion*

Because the Plaintiff failed to show that a genuine issue of material fact exists as to whether Moyana acted wilfully, maliciously, in bad faith, or beyond his authority regarding his supervision of Wooten, the court finds that Moyana is entitled to State-agent immunity on the remaining negligence and/or wantonness and/or recklessness claim. Therefore, this court finds that summary judgment is due to be granted in favor of Moyana and against the Plaintiff as a matter of law on this claim.

The court will enter a separate Order in conformity with this Memorandum Opinion.

DONE and ORDERED this 13th day of March, 2015.

                                            KARON OWEN BOWDRE
                                            CHIEF UNITED STATES DISTRICT JUDGE